MALLORY R. BEEBE, OSB #115138
Senior Deputy City Attorney
Mallory.beebe@portlandoregon.gov
DANIEL SIMON, OSB #124544
Deputy City Attorney
Dan.simon@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*
Atty 1 effective 5/31/24

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MARIE TYVOLL** | Case No.: 3:20-cv-01878-IM |
| **PLAINTIFF,** | |
| v. | **DEFENDANT CITY OF PORTLAND'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| **CITY OF PORTLAND**, a municipal corporation; **JUSTIN D. DAMERVILLE**, an individual; and **JOHN DOE**, unknown individual, | *Oral Argument Requested* |
| **DEFENDANTS.** | |

I.   MOTION AND INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50, Defendant City of Portland (the "City") moves for the court to rule that the City is entitled to judgment as a matter of law on plaintiff's state law claim of battery. Plaintiff has now been fully heard on her claims, and based on the

evidence in the record, a reasonable jury would not have a legally sufficient basis to find in favor of plaintiff on her battery claim. As the below cases show, Sgt. Damerville was justified as a matter of law in his use of force against plaintiff. Justification for force is an affirmative defense to plaintiff's battery claim against the City. Therefore, the court should grant judgment as a matter of law in the City's favor.

## II.    LEGAL STANDARD

The Court should grant judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. Pro. 50(a). The standard for judgment as a matter of law "mirrors the standard for summary judgment under Rule 56." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). The Court must, therefore, review all of the evidence in the record, not make any credibility determinations or weighing of evidence, and draw all reasonable inferences in favor of the nonmoving party. *Id*.

## III.    ARGUMENT

A battery is a voluntary act that causes intentionally harmful or offensive contact with another. *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 48–49 (1956). It is not necessary that the offensive, unpermitted touching cause actual physical harm; "it is sufficient if the contact is offensive or insulting." *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976). To constitute liability for a battery, the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact. *Id*. citing 1 Harper & James, The Law of Torts 215-17, §3.3 (1956).

Justification under ORS 162.235 is an affirmative defense to battery. Police officers in Oregon have a common law privilege and justification to use the degree of force or control

Page  2 –    DEFENDANT CITY OF PORTLAND'S MOTION FOR JUDGMENT AS A MATTER
                OF LAW

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

reasonably necessary to carry out their law enforcement activities. *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975). *Gigler* is the case most often cited regarding battery claims against police officers. In *Gigler*, the Court of Appeals affirmed the circuit court's judgment against the plaintiff on all of his claims. The plaintiff was ejected from Klamath Falls city hall. In evaluating the plaintiff's battery claim against the officer, the court concluded that the amount of force used against the plaintiff was "no more than necessary to accomplish the legitimate purpose of fulfilling their duty" to eject plaintiff from the meeting. *Id*. at 763. The court therefore, found that the force "was justified, as a matter of law, and there was no question to submit to the jury as to the cause alleging assault and battery." *Id*. (citing ORS 161.235, 161.245, 162.315). Federal cases considering Oregon battery claims have relied on the passage quoted above as establishing the standard for determining excessive force. *See e.g. Wilson v. Frates*, No. 3:16-CV-01690-BR, 2018 WL 700789, at *9 (D. Or. Feb. 2, 2018).

Accordingly, to prove battery plaintiff must show: (1) that Sgt. Damerville intended to cause her personal injury; and (2) that the force Sgt. Damerville exerted on her was greater than what was reasonably necessary to stop plaintiff from interfering with police activity.

In the case presently before the court, with the parties having been fully heard on the issue, the following facts have been established regarding Sgt. Damerville's use of force on plaintiff and are not in dispute.:

- On September 28, 2020, the Portland Police Bureau ("PPB") received information that people had gathered in Kenton Park in N Portland and that they had stacked up shields in the park. Shields had been an issue for police at the time because they could be used both defensively and offensively at the time.

Page 3 –    DEFENDANT CITY OF PORTLAND'S MOTION FOR JUDGMENT AS A MATTER OF LAW

- At the time, there had been well over a hundred nights of protests in Portland. However, on Sept. 28, 2020 PPB knew that there were significantly less protestors than usual in Kenton Park and officers

- Craig Dobson, who frequently served as incident commander during the protests, made a decision to enter the park to identify anybody people who were drinking in the park and sweep the park looking for weapons.

- When PPB Officers entered Kenton Park, they observed Dmitri Stoyanoff carrying a suspected weapon. Officers attempted to take the suspected weapon and Mr. Stoyanoff held onto it. The ensuing confrontation between the officers, and Stoyanoff drew a crowd of protesters including plaintiff.

- While officers engaged with Mr. Stoyanoff with their backs to the gathering crowd, Sgt. Damerville wanted to create a safe space for the officers to work. Sgt. Damerville told people in the crowd to get back or force would be used.

- Plaintiff observed PPB officers attempting to detain Stoyanoff and moved toward the officers to record the interaction on her cell phone.

- Plaintiff moved within arm's length of the officers who were attempting to detain Stoyanoff and stood behind them while holding her camera. Plaintiff later stated on video taken that evening that she was "filming them too close and they didn't like it" and also testified the same at her deposition. At trial, plaintiff confirmed that she made that statement because she was "too close to Dmitri."

- Sgt. Damerville realized plaintiff was directly behind the officers and instructed her to move back while holding Ms. Tyvoll with his arm. Ms. Tyvoll heard that command to get back.

- Plaintiff did not move and Sgt. Damerville felt resistance when he tried to hold Ms. Tyvoll back from the other officers. Sgt. Damerville pushed plaintiff back

Page 4 –     DEFENDANT CITY OF PORTLAND'S MOTION FOR JUDGMENT AS A MATTER OF LAW

- and gave her a second command to get back. Ms. Tyvoll heard that second command to get back.

- Sgt. Damerville was carrying a pepper spray canister in his right hand. He raised the canister toward plaintiff as another warning and plaintiff used her left hand to push Sgt. Damerville's right hand down. Plaintiff "swatted" at Sgt. Damerville's hands.

- Plaintiff "swatted" at Sgt. Damerville's free left hand with her left hand and held onto his hand.

- While plaintiff was holding onto Sgt. Damerville's free hand, he sprayed plaintiff in the face with a short, one second burst of pepper spray.

- Afterward, plaintiff moved away and joined other protesters while Sgt. Damerville rejoined his unit. Plaintiff remained at the scene, continuing to film with her phone, and spoke freely with other protestors.

- Plaintiff remained in Kenton Park until after the other protestors left.

- Portland Police Burau Directive 1010.00 at subsection 6.4.3.1.1 authorizes Portland police officers to use aerosol restraints "When a person(s) engages in physical resistance or indicates the intent to engage in physical resistance." (See Ex. 104, p. 7.

- "Physical Resistance" is defined in PPB Directive 1010.00 as "a person's physical attempt to evade a member's control that does not rise to the level of active aggression." (See Ex. 104, p. 2).

Sgt. Damerville's use of pepper spray to stop plaintiff after she swatted at him and held onto his hand was no more force than necessary to accomplish the legitimate purpose of keeping her a safe distance away from officers responding to Mr. Stoyanoff. Police officers were actively engaging with Mr. Stoyanoff when plaintiff approached the officers from behind and began

Page 5 –   DEFENDANT CITY OF PORTLAND'S MOTION FOR JUDGMENT AS A MATTER OF LAW

filming less than arm's length from them. When Sgt. Damerville ordered plaintiff to get back, plaintiff did not move further back and eventually began swatting at and grabbing Sgt. Damerville's hands.

This Court previously explained based on the summary judgment record that "a factfinder could find that Defendant Damerville encountered active resistance from Plaintiff and responded with reasonable force . . . [but] a factfinder . . . could also find that Plaintiff was engaged only in passive resistance and that Defendant Damerville's actions were unreasonable." (ECF 75 at 4). However, based on the undisputed evidence at trial, including her own testimony, Plaintiff was not engaged in passive resistance. Rather, plaintiff's actions—swatting at and grabbing onto Officer Damerville—constituted physical resistance. Officer Damerville's use of a short burst of pepper spray was a reasonable response and was therefore justified under Oregon law. *See, e.g., Price v. City of Sutherlin*, 945 F. Supp. 2d 1147, 1157 (D. Or. May 9, 2013) (success of plaintiff's assault and battery claim is contingent on whether officer's use of force was excessive or reasonable under the circumstances);

Judge Hernandez considered a similar situation to the current case in *Don't Shoot Portland et. al v. City of Portland*, 503 F. Supp. 3d 1022 (D. Or. 2020). This analysis was done with respect to a contempt motion where plaintiffs alleged that the City of Portland had violated a stipulated temporary restraining order restricting the use of less-lethal munitions at protests. One of the provisions of that restraining order required that: "(3) Aerosol restraints (handheld OC or "pepper spray") shall not be used against persons engaged in passive resistance, and consistent with PPB Use of Force Directive 1010, members shall minimize exposure to non-targeted persons." *Id*. at 1033. Judge Hernandez considered a situation where a protester had grabbed an officer's baton. *Id*. at 1028. The protester was pushed away, and a few seconds later was pepper sprayed when he turned back toward the officers. *Id*. Judge Hernandez held that a police officer's use of pepper spray did not violate the restraining order or PPB's Use of Force

Directive 1010 because the officer reasonably could have interpreted the protestor's actions as more than passive resistance:

> The unknown officer's use of OC spray against Mr. Cleinman (Incident 1) did not violate the Order. Both Mr. Cleinman's testimony and video of the incident show that an officer deployed OC spray against Mr. Cleinman mere seconds after Mr. Cleinman grabbed an officer's baton. Though this action may have been inadvertent and without any aggressive intent, there is no dispute that Mr. Cleinman grabbed an officer's weapon during a physical altercation. As an officer reasonably could have interpreted Mr. Cleinman's actions as more than passive resistance, the use of OC spray complied with the Order.

*Id*. at 1036.

Accordingly, plaintiff's intent in swatting at Sgt. Damerville and grabbing his hand, even if benign or purely reflexive, is not relevant to whether Sgt. Damerville's actions were reasonable. Regardless of whether plaintiff believed she was complying with police orders or not, and regardless of whether plaintiff believed her swatting at officers' hands was inadvertent or not, the relevant facts established at trial establish that Sgt. Damerville reasonably interpreted plaintiff grabbing and swatting at his hands as more than passive resistance.

The government has a safety interest in addressing protestors who are interfering with police activity. *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018). Sgt. Damerville was in a highly charged environment, with officers attempting to confiscate a potential weapon, and a crowd of angry, screaming people, physically pushing toward the police interaction. Plaintiff pushed back against Sgt. Damerville, ignored multiple orders from Sgt. Damerville to "get back," swatted at Sgt. Damerville's canister of pepper spray, and ultimately held onto Sgt. Damerville's hand. This constituted physical resistance that interfered with police officers carrying out their duties in an already volatile environment. In response Sgt. Damerville used a very short, controlled burst of pepper spray. This was an objectively reasonable use of force necessary for Sgt. Damerville to fulfill his responsibilities of keeping officers safe and in response to plaintiff's attempted interference and physical resistance.

The undisputed evidence, including plaintiff's own testimony of what occurred, demonstrate that Sgt. Damerville's use of force was justified and privileged as a matter of law.

## CONCLUSION

Based on the facts and legal precedents describe above, the court should rule that the actions of Sgt. Damerville were justified and privileged as a matter of law. Because justification is a complete defense plaintiff's battery claim, the court should grant the City's Motion for Judgment as a Matter of Law on that claim.

Dated:  November 14, 2024

Respectfully submitted,

/s/ *Mallory R. Beebe*

_____
MALLORY R. BEEBE, OSB #115138
Senior Deputy City Attorney
Mallory.beebe@portlandoregon.gov
DANIEL SIMON, OSB #124544
Deputy City Attorney
Dan.simon@portlandoregon.gov